```
         IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF TEXAS
                  FORT WORTH DIVISION
```

KEITH SPALDING AND            §
LYNDA HIGGINS                 §
                              §
VS.                           § CIVIL ACTION NO. 4:08-CV-064-Y
                              §
TIM TRUMAN                    §
CHAPTER 13 TRUSTEE            §

ORDER AFFIRMING BANKRUPTCY COURT'S DENIAL OF CONFIRMATION

Pending before the court is the appeal of Keith Spalding and Lynda Higgins ("Appellants") from the bankruptcy court's order denying confirmation of their proposed chapter 13 plan.  Because the Court finds that the bankruptcy court was correct in requiring Appellants to prorate their qualified retirement deduction represented by their repayment of a 401(k) loan over the full sixty months of their plan, the bankruptcy court's order denying confirmation is AFFIRMED and the case REMANDED to allow for filing of an amended plan.

I.  Background

On April 30, 2007, appellants filed for chapter 13 bankruptcy. Their proposed bankruptcy plan was filed the same day.  Line 55 of official form 22C calls for debtors to disclose "qualified retirement deductions." "Qualified retirement deductions" includes the repayment of loan draws against a debtor's 401(k) plan.  *See* 11 U.S.C. § 362(b)(19).  These qualified retirement deductions reduce the debtor's disposable income, and, in turn, the amount to be paid to unsecured creditors.  *See* 11 U.S.C. §§ 1322(f) and 1325(b).

In filing out line 55, Appellants claimed their repayment of a

401(k) loan.  They based their monthly average loan repayment on the payments they were actually making, rather than taking the total loan amount and averaging it over the course of their sixty-month plan. The trustee objected to this, noting that, based on the payments disclosed by Appellants, their 401(k) loan would be repaid by month 24 of their bankruptcy plan.  Thus, the trustee argued, Appellants were attempting to take the benefit of the full actual monthly payment over the course of the entire plan.  The trustee asserts that, instead, the Appellants should be required to prorate the loan payments over the sixty-month plan.  In this way, they will be entitled to reduce their disposable income by only the amounts actually required to pay the loan. Otherwise, the trustee contends, the plan fails to distribute all projected disposable income to the Appellants' general unsecured creditors.  Thus, the issue is whether, in completing line 55 of form 22C, the appellants were required to divide the 401(k) loan amount by sixty months or were instead allowed to use the average payment amount they were actually making.

II. Standard of Review

A district court reviews a bankruptcy court's findings of fact for clear error.  Bankr. R. 8013; *Matter of Missionary Found. of Am.*, 818 F.2d 1135, 1142 (5th Cir. 1987).  The bankruptcy courts' conclusions of law are subject to *de-novo* review.  *Fritiofson v. Alexander*, 772 F.2d 1224, 1239 (5th Cir. 1985).

III. Discussion

Under 11 U.S.C. § 1325(b)(1)(B), if the trustee objects to confirmation of a debtor's proposed bankruptcy plan, a court may not approve the plan unless, among other things, the plan provides that all of the debtor's projected disposable income during the commitment period will be used to pay unsecured debtors under the plan. *See* 11 U.S.C. § 1325(b)(1)(B).

One bankruptcy court recently noted, "[a]rguably no change [to the bankruptcy code effected by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005] has generated as fundamental a difference in the bankruptcy courts' reported opinions as how to determine projected disposable income for above median income debtors in chapter 13." *In re Roberts*, No. 07-15653DWS, 2008 WL 4279549, at *5 (E.D. Pa. September 17, 2008) (citing Hon. Thomas F. Waldron and Neil M. Berman, Principled Principles of Statutory Interpretation: A Judicial Perspective after Two Years of BAPCPA, 81 Amer. Bankr.L.J. 195-96 (Summer 2007)). As observed by the *Roberts* court, it appears that two lines of cases have developed regarding the issue of whether the satisfaction of a loan described in sections 1322(f) and 362(b)(19) during the commitment must be reflected in the debtors' proposed plan payment.

Prior to the 2005 amendments to the bankruptcy code, in determining disposable income, a court could consider predictable future events. *See In re Roberts*, 2008 WL 4279549, at *4 n.9 (citing

3

*Comm. Credit Corp v. Killough*, 900 F.2d 61, 65 (5th Cir. 1990) (potential for overtime income was too speculative to include in projected disposable income calculation). Some courts, relying upon the word "projected" and the phrase "to be received" in section 1325(b)(1)(B) as "forward-looking modifiers of . . . disposable income," continue to consider such events in predicting disposable income. *In re Roberts*, 2008 WL 4279549 at *5 (collecting cases). This appears to be the majority approach. *See In re Lanning*, 380 B.R. 17, 22 (B.A.P 10th Cir. 2007) (noting this approach has generated the majority of published decisions).

Other courts take the term "projected" to simply call for the multiplication of disposable income as stated in form 22C by the number of months in the commitment period. *Id.* (collecting cases). There is precedent within the Fifth Circuit, although predating the 2005 amendment, that has been taken to support this more mechanical determination of projected disposable income. *Anderson v. Satterlee*, 21 F.3d 355, 357 (9th Cir. 1994) (citing *Comm. Credit Corp. v. Killough*, 900 F.2d 61, 64 (5th Cir. 1990)).

Appellants argue that this interpretation is supported by the instructions within form 22C. They note that, while the computation in lines 47, 48, and 49 of payments of secured and priority claims calls for a sixty-month average, the instructions for line 55 do not direct the debtor to divide qualified retirement deductions by sixty months. Instead, line 55 calls for a "monthly average" which

4

Appellants contend means the payment actually made based on the life of the loan, rather than the sixty-month commitment period.

Appellants also cite *In re Haley*, 354 B.R. 340 (Bankr. D.N.H. 2006) and *In re Wiggs*, No. 06-B-70203, 2006 WL 2246432 (Bankr. N.D. Ill. 2006), for the proposition that "monthly average" must be interpreted to mean the actual loan payment amount. In both cases, the bankruptcy courts note that line 55 instructs the debtor to "[e]nter the monthly average of . . . all repayments of loans from retirement plans, as specified in § 362(b)(19)." *In re Haley*, 354 B.R. at 344; *In re Wiggs*, 2006 WL 2246432 at *3. These courts go on to note that § 362(b)(19) applies to 401(k) loan repayments, and that § 1322(f) prohibits the material alteration of the terms of such a loan. *In re Haley*, 354 B.R. at 344; *In re Wiggs*, 2006 WL 2246432 at *3. In light of this prohibition, these courts conclude that proration of loan repayments over the sixty-month plan is not allowed. *In re Haley*, 354 B.R. at 344; *In re Wiggs*, 2006 WL 2246432 at *3.

Appellants, however, have not explained how prorating their 401(k) loan repayments over their sixty-month plan materially alters the terms of the loan itself. The cases they rely upon are equally unhelpful in explaining how prorating the repayment of a 401(k) for purposes of determining projected disposable income amounts to a material alteration of the loan itself. To the contrary, calculation of disposable income by prorating 401(k) loan payments over the commitment period "does not, by itself, establish the debtor's plan

payment nor the order in which claims will be paid." *In re Novak*, 379 B.R. 908, 911 (Bankr. D. Neb. 2007). Therefore, regardless of the interpretation of "projected disposable income" adopted by this Court, it seems clear that prorating 401(k) loan repayments does not impermissibly modify the terms of the loan as prohibited by § 1332(f). *See id.* (refusing to adopt the broader interpretation of "projected" but approving proration because it is not a material alteration of repayment terms and because proration was the only way to ensure that only amounts required to repay the loan are excluded from disposable income as required by § 1322(f)).

In support of his argument for proration, the trustee points out that a chapter 13 plan may not be confirmed over his objection unless the plan provides that all of the debtor's projected disposable income will be applied to pay unsecured creditors during the commitment period. *See* 11 U.S.C. § 1325(b)(1)(B). The trustee argues that, as it currently stands, the plan allows Appellants to reduce disposable income by the amount of actual payments made on their 401(k) loan over the life of the plan, even though the payments will cease as of month twelve of the plan. Thus, argues the trustee, the plan does not provide for all disposable income to be paid to unsecured creditors and cannot be confirmed.

Courts supporting the trustee's position note that "disposable income" is defined by 11 U.S.C. § 1325(b)(2)(A) as the debtor's "current monthly income" less certain amounts listed in the statute.

*See, e.g., In re Lanning*, 380 B.R. 17, 22 (B.A.P. 10th Cir. 2007). These courts go on to note that the inclusion of the word "projected" in § 1325(b)(1)(B) demonstrates that that section addresses more than the figure resulting from multiplying disposable income by the number of months in the commitment period. *See, e.g., In re Lanning*, 380 B.R. at 22. Instead, these courts conclude that the use of the word "projected" in relation to disposable income, as well as the use of the phrase "to be received by the debtor" in § 1325(b)(1)(B), indicates that Congress intended bankruptcy courts to consider a debtor's future ability to pay in calculating projected disposable income. *See, e.g., In re Lanning*, 380 B.R. at 22.

The only circuit court of appeals to weigh in on this issue has criticized this line of cases in concluding that "projected disposable income" is not to be adjusted based on foreseeable future events. *In re Kagenveama*, ---F.3d---, No. 06-17083, 2008 WL 2485570, at *2-5 (9th Cir. June 23, 2008). The United States Court of Appeals for the Ninth Circuit noted that to add anything to the calculation of projected disposable income "would render as surplusage the definition of disposable income found in § 1325(b)(2)." 2008 WL 2485570 at *2. According to the court of appeals, the word "projected" is only a modifier of the defined term disposable income and is not a sufficient basis for considering matters outside of the definition of disposable income. *Id.* at *3. As for the contention that disposable income may be used as a starting point for determining projected disposable

7

income, the court of appeals concluded there was no statutory support for such use of disposable income as a "presumpt[ion] . . . subject to modification based on anticipated changes in income or expenses." *Id.* at *4. Rather, the amendments to the code were intended to do away with such flexibility. *Id.*

This Court concludes that, although the purpose of the 2005 amendments to the code may have been to refine and lend objectivity to its provisions, Congress's ultimate intent was to "ensure that those who can afford to repay some portion of their unsecured debts [be] required to do so." *In re Hardacre*, 338 B.R. 718, 725 (Bankr. N.D. Tex. 2006) (citing 151 Cong. Rec. S2470 (March 10, 2005)). This intent can be fulfilled from the outset of a chapter 13 plan through an interpretation of § 1325 that gives meaning to both "disposable income" and "projected disposable income." The Court concludes that the reading of "disposable income" that most comports with the purposes and language of the code recognizes disposable income under § 1325(b)(2)(A) as the starting point in determining projected disposable income. The term "projected" and the phrase "to be received" in § 1325(b)(1)(B), then, allow the bankruptcy court to adjust this figure to account for predictable future events affecting the debtor's disposable income. *In re Lanning*, 380 B.R. at 22 & n.13 (noting, in interpreting § 1325, a court is to give meaning to every word used in a statute).

To interpret the statute otherwise would not only ignore these

specific aspects of § 1325(b), it would also violate the directive of § 1322(a) that the debtor "submit *all future* earnings to the supervision and control of the trustee as is necessary for the execution of the plan." *See* 11 U.S.C. § 1322(a); *In re Nowlin*, 366 B.R. 670, 676 (Bankr. S.D. Tex. 2007) (emphasis added). Moreover, to rule otherwise would ignore the purpose of the 2005 amendments and the reality of the circumstances presented by a case such as the one currently before the Court. As noted above, Congress intended that those who could pay their unsecured debts be required to do so. Yet, according to Appellants and the cases they cite in support, a bankruptcy court must approve a chapter 13 plan when even the debtors recognize their disposable income will increase during the term of the plan without provision in the plan to address this increased ability to pay unsecured creditors. Even in the complex and often confusing world of bankruptcy, a court need not ignore the reality of the facts presented to it. *See In re Mullen*, 369 B.R. 25, 34 (Bankr. D. Or. 2007) (noting that "[c]hapter 13 is not some alternative universe where reality dare not tread").

Appellants respond that once they have paid off their 401(k) loan the trustee may petition for a modification of the plan. However, the Court can see no reason why the bankruptcy court could not resolve the matter as part of the initial chapter 13 plan rather than require additional future litigation, given that all the relevant facts were already before the court. *In re Nowlin*, 366 B.R. at 674 (noting that

allowing consideration of the definite termination of 401(k) payments avoided the unnecessary step of filing for modification).

Finally, the Court notes that this decision is not contrary to *In re Killough*. In *Killough*, prior to the 2005 amendments, the Fifth Circuit held that usually a debtor's projected disposable income is to be determined by multiplying the debtor's monthly disposable income by the number of months in the plan. 900 F.2d 61, 64 (5th Cir. 1990). The Ninth Circuit has cited *Killough* in support of its adoption of the mechanical calculation of projected disposable income. *See Anderson v. Satterlee*, 21 F.3d 355, 357 (9th Cir. 1994). However, *Killough's* language is qualified. *See* 900 F.2d at 64 (describing what must "usually" be done). Further, *Killough* itself, as well as other cases decided by the Fifth Circuit, demonstrates that consideration of future events is at times appropriate in evaluating projected future income. *See* 900 F.2d at 65 (approving of bankruptcy court's refusal to consider projected overtime for a chapter 13 debtor because it was too speculative); *cf. United States Tr. v. Cortez*, 457 F.3d 448 (5th Cir. 2006) (noting, in the context of an 11 U.S.C. § 707 substantial-abuse analysis, that "permitting a debtor to retain post-petition improvements in earnings, without committing the increase in income that is not reasonably necessary for support of the debtor or the debtor's dependents, would be grounds for rejection or later modification of a Chapter 13 plan.").

IV. Conclusion

In light of the foregoing, the bankruptcy court was correct in denying confirmation of Appellant's bankruptcy plan. Accordingly, the bankruptcy court's decision is AFFIRMED and this case is REMANDED to the bankruptcy court so that Appellants may file an amended plan.

SIGNED October 14, 2008.

_____
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE